THOMAS L. WICKER AND BETTYE WICKER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Wicker v. Commissioner
Docket No. 11064-84.
United States Tax Court
T.C. Memo 1986-1; 1986 Tax Ct. Memo LEXIS 605; 51 T.C.M. (CCH) 225; T.C.M. (RIA) 86001; January 2, 1986. Flavous L. Hutchinson, for the petitioners. J. Craig Young, for the respondent. KORNER
MEMORANDUM FINDINGS OF FACT AND OPINION KORNER, Judge: Respondent determined deficiencies in petitioners' income tax for the years 1979 and 1980, in the respective amounts of $1,885 and $3,438.49. After concessions, the only remaining issues which we must decide are the deductibility, in the years 1979 and 1980, of certain expenses incurred by petitioner Bettye Wicker in the ownership and operation of an automobile, and the allowability of an investment tax credit to her for the purchase of an automobile in 1980. Many of the facts herein were stipulated, and such stipulation, together with accompanying joint exhibits, is incorporated herein by this reference. FINDINGS OF FACT Petitioners were residents of New Albany, Mississippi, at the time their petition herein was filed. For the calendar years 1979 and 1980 petitioners filed joint individual income tax returns with the Internal Revenue Service Center at Chamblee, Georgia. During the years in issue, as well as for a number *607 of years prior thereto, petitioner Bettye Wicker (hereinafter "petitioner") [1] was a self-employed individual practicing the profession of nurse-anesthetist. In 1979 and 1980, petitioner practiced her profession in part at the Union County General Hospital (hereinafter "the hospital"), in New Albany, Mississippi. She was not an employee of the hospital and was not paid a salary. Under her contract with the hospital (in oral form in the years before us, but later reduced to written form) petitioner served as the working head of the Department of Anesthesiology at the hospital. [2]
It was petitioner's responsibility to provide anesthesia services for all hospital patients, when required. The regular operating schedule at the hospital was from Monday through Friday, beginning at about 9:00 a.m., with *608 extraordinary or emergency surgery performed on Saturdays. The great majority of anesthesia in the hospital in the years in question was administered by petitioner personally, at the rate of 120 to 140 patients per month. If a case arose where petitioner was not available for any reason, she had to arrange for another qualified anesthetist on the day or the night preceding the scheduled operation, and she was responsible for the satisfactory performance of such other anesthetist. Petitioner charged each patient for the services which she performed in administering anesthesia in accordance with a fee schedule and guideline published by the American Anesthesiology Association. The fees varied with the type and difficulty of the operation involved, and the physical condition of the patient. Petitioner's fees were billed and collected by the hospital, which then deducted an agreed percentage of the fee and remitted the balance to petitioner. Her services to a patient typcially included a preoperative visit and interview with the patient, in order to evaluate the patient's condition and special requirements, the administration of anesthesia during the operation, and a post-operative *609 checkup on the patient's condition, with particular attention to any adverse reaction to the anesthetic employed. It was petitioner's responsibility to determine the amount and type of anesthetic to be administered, based upon her evaluation of the surgery involved and the particular patient's condition. Petitioner was on 24 hour call with the hospital and, when she was not at the hospital or at her home office (hereinafter described) where she could be reached by telephone, she carried a paging device and arranged to be within 15 minutes of a telephone. So far as this record discloses, petitioner was the only full time anesthetist practicing at the hospital. That institution, however, would not provide any office space for petitioner's use, and accordingly she maintained an office in the basement of her home, which she used exclusively for the practice of her profession. In that office, inter alia, she maintained professional books such as books and manuals on anesthesia. She also maintained a ledger of the cases in which she had served, including the patients' name, copies of the charges which she made with respect to each patient, medical notes related to patients which she *610 was handling, a schedule of her appointments for operations, records of other anesthetists secured by her to perform services at the hospital, and the like, including tax records. The hospital was accredited by the Joint Commission on Accreditation, and to comply with its requirements, the anesthesia department of the hospital had to have a policy procedure manual. Petitioner wrote this manual herself, first in 1977, and then in 1980 she revised the entire book. The work on this manual was done in her home office, as well as the preparation of lectures and educational material for the one "in-service" day every month which petitioner was required to give in the obstetrical department of the hospital. In the years 1979 and 1980, under the requirements of the Joint Commission on Accreditation, petitioner had to personally prepare and file a report, four times a year, covering the anesthesia treatment given to patients during the preceding quarter. Such reports were prepared by petitioner at her office. In addition to the various records and educational materials prepared and kept by petitioner in her home office, she also conferred by telephone there with doctors at the hospital, *611 both with regard to scheduling of appointments as well as with respect to the condition of patients, and used her office telephone to arrange for the services of other anesthetists. Petitioner's office in her home was the only office which she had. She traveled between her home office and the hospital in her own automobile, and frequently made several round trips a day in connection with her duties. For the years 1979 and 1980, petitioner incurred and claimed the following amounts as business deductions with respect to the use of her automobile in traveling between her office and the hospital, and respondent disallowed such claimed deductions, as follows: Claimed on
Allowed by
Disallowed by
Expense
Return
Respondent
Respondent
Car Expenses
1979
$2,415.00
$0
$2,415.00
1980
2,777.25
0
2,777.25
Insurance
1979
1,554.00
832.12
721.88
1980
1,971.60
1,554.00
417.60
Car Repairs and Tires
1979
713.12
0
713.12
1980
710.75
0
710.75
Car Taxes and Tags
1979
197.57
0
197.57
1980
531.45
0
531.45
Depreciation
1979
642.60
163.59
479.01
1980
3,153.99
153.99
3,000.00
Totals 1979
$4,526.58
1980
$7,437.05
*612 In 1980, petitioner purchased an automobile for $10,000. Ninety percent of this automobile's use in 1980 was by petitioner in traveling between her office and the hospital. Petitioner claimed an investment tax credit of $300 with respect to the purchase of this automobile in her 1980 return, which respondent disallowed. ULTIMATE FINDINGS OF FACT Petitioner's home office was her principal and only office, in which a substantial part of her work was performed. The claimed automobile expenses incurred by petitioner in 1979 and 1980 were incurred by her in the pursuit of her trade or business. The automobile purchased by petitioner in 1980 was used to the extent of 90% by her in the conduct of her trade or business. OPINION The principal issue in this case involves the deductibility, for Federal income tax purposes, of automobile expenses incurred by petitioner in traveling between her home office and the hospital, in the practice of her profession as a nurse-anesthetist. At the outset, it should be made clear what matters are not in issue: (a) No claimed deductions with respect to petitioner's home office are in dispute, and (b) the fact that petitioner incurred the *613 automobile expenses in question, and the amount thereof, has likewise been stipulated by the parties. What remains, then, is: This case presents the old, old question of the tax deductibility of transportation costs going to and from work. [Footnote omitted.] More precisely, the question probably is what is the place of work? * * * [
Petitioner claims that the automobile expenses here in issue were incurred by her in traveling from her principal office, which was in her home, to the hospital where she assisted in surgery as the anesthetist, and that such expenses are therefore deductible under section 162. [3] Respondent, on the other hand, contends that these automobile expenses were nondeductible personal commuting expenses, incurred by petitioner in traveling to and from her home and the hospital which respondent argues was petitioner's principal place of business, and therefore are not deductible under section 162, by reason of the specific provisions of section 262. [4]
*614 Over the years, in interpreting the above Code sections, it has become well established that the expenses which a taxpayer incurs in commuting between his home and place of business are personal and nondeductible. ; , affd. per curiam . See also sections 1.162-2(e) and 1.262-(1)(b)(5), Income Tax Regs. Expenses incurred on trips between places of business, however, may be deductible. , affg. and remanding ; ;, affd. per curiam . To the last proposition, however, a further refinement has been added: that where the taxpayer seeks to deduct the expenses of traveling between two places of business, and where one of such places is an office in his home, such home office must be his principal place of business in which he does a substantial amount of work. ; *615 ; . In resolving this last question, "[t]he location of a taxpayer's 'principal office' is a question of fact to be determined by evaluating all the evidence." . Taking into account the totality of the circumstances in this case, as disclosed by this record, we hold in favor of petitioner on this issue. Admittedly, the distinctions which are drawn are sometimes fine, and it is not always easy to reconcile the cases involving this troublesome question. The travel involved must be more in the nature of travel between business locations, rather than that of ordinary commuting, see , and the home office involved must in truth be the taxpayer's principal office, see Watts v. United States, 82-2 USTC par. 9439, . In this case, however, we think the necessary tests have been met. Unlike the taxpayer in *616 (a doctor/anesthesiologist), petitioner was not an employee of the hospital. She was a self-employed professional, practicing her profession at the hospital under contract with that institution. She thus occupied the same status vis-a-vis the hospital as the surgeons in private practice who operated there and whom she assisted. Under her contract with the hospital, petitioner was responsible for the provision of all anesthesia services there. The evidence shows that about 85% of such services were performed by herself, but if for any reason she was not available, it was her responsibility to provide another qualified anesthetist for the operation. She was on 24-hour call at the hospital, and had to check in with the hospital and the operating surgeons the evening before scheduled operations to make sure of the operating schedule for the following day. Where other anesthetists were required, she had to make these arrangements herself, usually by telephone. In addition to her services in administering anesthetic during an operation, petitioner's contract required her to prepare and revise the policy and procedure manual for the Department of Anesthesia in the hospital, and to make *617 quarterly reports of her cases, consistent with the requirements of the Joint Committee on Accreditation. She was further required to give one "in-service" day in the Obstetrical Department of the hospital in each month, which required her to prepare her lectures and other educational materials for this purpose. The above duties, many of them outside the hospital, were carried on by petitioner in an office which she maintained in her home. In addition, she used that home office for keeping records of the cases in which she served, billing records with respect to her patients, records of the scheduling of operations involving both herself and other anesthetists whom she recruited, and notes of her preoperative and postoperative interviews with patients regarding their particular requirements for anesthesia. She maintained books and reference materials and tax records in her home office. We find all of this perfectly ordinary and necessary in the case of a self-employed professional such as petitioner, and doubly so in view of the fact that the hospital refused to provide petitioner with any office space. Respondent argues that petitioner's principal place of business should be *618 held to be the hospital, where she assisted in operations and allegedly earned all her fees, rather than in her home office where, as respondent would have it, no fees were earned, no patients were seen, and only miscellaneous duties were performed. We find respondent's contentions under the instant circumstances to be without merit. The surgeon in private practice, operating at the hospital, may in the very narrowest sense earn all his fees in the operating room, but he cannot conduct his private practice out of his hip pocket or from a pay telephone down the hall from the operating room. The attorney who confines his practice to litigation may, in the narrowest view, earn all his fees in the courtroom, prosecuting or defending his clients' cases, but he cannot be expected to maintain his practice from the counsel table, or out of the briefcase under his arm. We would not hold that either of those professionals had their "principal place of business" in the operating room or courtroom, respectively, so as to deny them the reasonable costs of their transportation from their offices to the place where they perform their fee-earning services. So far as this petitioner's office *619 in her home was concerned, the work which she did there, as we have described in our findings of fact, was an integral part of her contract arrangement with the hospital. These included the preparation of in-service lectures and educational materials, the revision of the policy procedure manual for anesthesia, the quarterly reports which petitioner was required to prepare, the scheduling of operations, and the employment of other anesthetists, as necessary. These services, for which there was apparently no direct compensation, were all part of her duties in her position as working head of the Department of Anesthesiology at the hospital. We accordingly have no difficulty in finding that her home office was her principal place of business, in which a substantial part of her work weas performed. ;The fact that no specific dollar of fee income can be attributed to the work petitioner did in her home office is not determinative under these circumstances. See , affd. without published opinion . *620 We accordingly hold that petitioner's automobile expenses in 1979 and 1980, as stipulated by the parties, are deductible under section 162. ;;. Our disposition of this issue also controls the disposition of the second minor issue in this case. In 1980, it is stipulated that petitioner acquired a new automobile at a cost of $10,000, which she used in traveling between her office and the hospital, to the extent of 90%. Since, as we have held, such travel was business related, it follows that this automobile was an asset used in her trade or business, was depreciable within the meaning of section 167, and therefore qualified as "section 38 property" within the meaning of section 48(a). Petitioner was accordingly entitled to an investment tax credit for the year 1980, the year the automobile was purchased, based upon 90% of the cost thereof, under section 46, in the amount of $300. Decision will be entered under Rule 155.
Footnotes
1. Petitioner Thomas L. Wicker is involved herein only because of signing a joint return with petitioner Bettye Wicker for the years in issue, and he will not be referred to hereinafter. ↩
2. Nominally, a self-employed surgeon with practicing privileges at the hospital was designated as Chief Anesthesia Services, but in fact petitioner ran and was responsible for the department.↩
3. All statutory references are to the Internal Revenue Code of 1954, as in effect in the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, except as otherwise noted. ↩
4. The Code provisions involved here, as relevant, are as follows: SEC. 162. TRADE OR BUSINESS EXPENSES. (a) In General.--There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or busines * * * SEC. 262 PERSONAL, LIVING AND FAMILY EXPENSES. Except as otherwise expressly provided in this chapter, no deduction shall be allowed for personal, living, or family expenses.↩